**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GEORGE JENEWICZ**, <br><br> Petitioner, <br><br> v. <br><br> **THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY & THE STATE OF NEW JERSEY**, <br><br> Respondents. | Civil Action No. 19-12383 (ZNQ) <br><br> **OPINION** |

**QURAISHI, District Judge**

Petitioner George Jenewicz, a prisoner at East Jersey State Prison in Rahway, New Jersey, is proceeding *pro se* with the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Am. Pet., ECF No. 3.) Following an order to answer, Respondents filed a response to the petition. (Resp'ts' Resp., ECF No. 8). Petitioner did not reply. For the following reasons, the Court will deny the petition and will not issue a certificate of appealability.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

In 1998, Petitioner shot and killed his live-in girlfriend, Eunice Gillens, and dismembered her body in his South River, New Jersey residence. *See State v. Jenewicz*, No. A-5031-08T4, 2013 WL 5629169, at *1 (N.J. Super. Ct. App. Div. Oct. 16, 2013). The Superior Court of New Jersey – Appellate Division (the "Appellate Division") summarized the relevant facts from evidence presented at trial[1] as follows:

---

[1] A jury first tried Petitioner in 2002 and found him guilty of capital murder, among other things, but the New Jersey Supreme Court reversed the conviction in part on direct appeal and remanded the matter for a new trial. *See State v. Jenewicz*, 940 A.2d 269, 289 (N.J. 2008). The summary of facts below is taken from Petitioner's retrial in 2008. *See Jenewicz*, 2013 WL 5629169, at *1.

At approximately 9:30 in the evening of October 30, 1998, Iwan Terenin and Leonid Chernyavskiy drove to the Borough of South River Police Department to report what they believed was evidence of a dead body at defendant's residence on Cleveland Avenue. In response, Police Officer John Casey and five other South River police officers drove Terenin and Chernyavskiy to defendant's residence. Casey did not [initially] disclose to the jury the reasons that prompted him and five of his fellow officers to respond to this location.

After Terenin and Chernyavskiy confirmed that this was the house in question, Casey deployed three officers to the rear of the residence, while he and two other officers "went to the front door." According to Casey, when he knocked on the door, "[a]ll the lights were out in the residence." Defendant answered the door "[a]fter a short period of time." Casey told defendant he and his fellow officers wanted to speak to him. At Casey's request, defendant permitted him and three other officers to come inside the house.

Overruling defense counsel's objection, presumably on hearsay grounds, the trial judge permitted Casey to testify that he told defendant "that the two witnesses pointed out his house, that there was possibly a dead body located in [defendant's] residence . . . ." Casey also asked defendant "if [he] could look around the residence to see if there was a dead body in the residence." Casey testified that immediately after defendant consented to his request "to look around," defendant said: "that fucking bitch and immediately urinated himself to the point where there was a puddle on the floor."

Based on defendant's reaction, the officers at the scene began searching defendant's home. The search soon ended when one of the officers told Casey to go "to the basement area." As he descended the staircase that led to the basement, Casey "smelled an extremely foul odor coming from the basement area." Because the basement was "pretty dark," the officers used their flashlights to search the area. Casey and two other officers eventually found "a gray metal garbage can with a black bag sticking up out of the garbage can." The can was located underneath the basement stairwell.

Casey asked one of the officers to use a knife to "cut the garbage bag open" in order to see what it contained. Although not entirely discernible at first, upon closer inspection Casey and the two other officers with him "observed what appeared to be human legs and feet."

2

*Id.* at *1–9.

The human remains were later identified as Gillens'. *State v. Jenewicz*, No. A-3580-15T1, 2017 WL 5898962, at *1 (N.J. Super. Ct. App. Div. Nov. 30, 2017). Police arrested Petitioner and read him his *Miranda* rights. *Id.* Thereafter, Petitioner provided a sworn, recorded statement to the police admitting that he killed Gillens and dismembered her body, but he maintained that he shot her out of self-defense because they had been arguing and she had allegedly reached for a gun. (*See* Statement of George Jenewicz, ECF No. 8-4.) Petitioner also provided similar testimony at trial. *See Jenewicz*, 2017 WL 5898962, at *1; (Sept. 23, 2008 Tr. Transcript, ECF No. 11-2, at 63:14–71:4.)

The jury found Petitioner guilty of first-degree murder and second-degree possession of a weapon for unlawful purposes. (*See* 2008 J. of Conviction, ECF No. 8-4.) The trial judge sentenced Petitioner to life imprisonment with a thirty-year period of parole ineligibility. (*See id.*)

Petitioner appealed his conviction and sentence. (*See* Notice of Appeal, ECF No. 8-6.) In addition to claims raised by his appellate counsel, Petitioner asserted several claims pertinent to this proceeding in a *pro se* brief. (*See Pro Se* Direct Appeal Br., ECF No. 8-8.) On October 16, 2013, the Appellate Division affirmed the judgment of conviction, *see Jenewicz*, 2013 WL 5629169, at *1, and the New Jersey Supreme Court denied Petitioner's petition for certification on April 11, 2014, *see State v. Jenewicz*, 88 A.3d 936 (N.J. 2014) (unpublished table decision).

Petitioner also filed a petition for post-conviction relief ("PCR"), which the PCR trial court denied on March 7, 2014. (*See* Order Den. PCR Pet., ECF No. 17.) The Appellate Division affirmed on November 30, 2017, *see Jenewicz*, 2017 WL 5898962, at *4, and the New Jersey Supreme Court denied Petitioner's petition for certification on May 4, 2018, *see State v. Jenewicz*, 184 A.3d 913 (N.J. 2018) (unpublished table decision). The United States Supreme Court denied

Petitioner's petition for writ of certiorari on October 15, 2018. *See Jenewicz v. New Jersey*, 139 S. Ct. 380 (2018).

On May 7, 2019, Petitioner filed a petition for writ of habeas corpus with this Court. (*See* Pet., ECF No. 1.) Subsequently, Petitioner filed the instant amended petition, which raises the following four grounds for relief:

> Ground One: I was denied the right of cross-examination as to the credibility of state witness, Iwan Terenin, under the [Sixth and Fourteenth] [A]mendments;
>
> Ground Two: Violation of search and seizure standards of the [Fourth] [A]mendment and due process of the [Fourteenth] [A]mendment;
>
> Ground Three: [I] was not allowed to demonstrate to [the] jury my state of mind due to intoxication in regards to the "force of law" syndrome when they knocked at my door [in violation of the Sixth and Fourteenth Amendments]; and
>
> Ground Four: Discovery of evidence was not inadvertent since [the police] came in force surrounding my residence.

(*See* Am. Pet., ECF No. 3.)

On December 19, 2019, Respondents filed a response to the amended petition, (*see* Resp'ts' Resp.), but Petitioner did not reply. Accordingly, the issues are ripe for determination.

## II.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based

4

upon the record that was before the state court. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).

Moreover, district courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the "'last reasoned' decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009). Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "Clearly established federal law for purposes of [Section 2254(d)(1)] includes only the holdings, as opposed to the dicta of the United States Supreme Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

### III. DISCUSSION

#### A. Confrontation Claim (Ground One)

In his first claim, Petitioner argues that he "was denied the right of cross-examination as to the credibility of state witness, Iwan Terenin . . . ." (*See* Am. Pet. 6.) According to Petitioner, during the grand jury hearing, Terenin "fabricated" his testimony that he told police there was a possible dead body in Petitioner's house as part of a "conspiracy with the prosecutor's office" to justify the warrantless search of Petitioner's home. (*See* Am. Pet. 6; *Pro Se* Direct Appeal Br. 1–2.) To "keep[] what was done quiet," the prosecutor's office "went out of their way to keep [Mr.] Terenin off the stand." (*See* Am. Pet. 6; *Pro Se* Direct Appeal Br. 1–2.) For example, rather than having Terenin take the stand and be subject to cross-examination, Petitioner contends that prosecutors admitted Terenin's statement by other methods, including by Officer Casey's

6

testimony as to what Terenin told police[2] and through admission of the grand jury transcript,[3] in violation of Petitioner's Sixth Amendment rights.  (*See* Am. Pet. 6; *Pro Se* Direct Appeal Br. 1–2.)

Petitioner raised this claim on direct appeal.  (*See Pro Se* Direct Appeal Br. 1–2.)  As the New Jersey Supreme Court summarily denied it, *see Jenewicz*, 88 A.3d at 936, this Court "look[s] through" the summary denial and applies AEDPA's standards to the Appellate Division's determination.  *See Simmons*, 590 F.3d at 231–32.

---

[2] The following exchange occurred at trial during the prosecution's direct examination of Officer Casey:

> Q.  Did you tell [Petitioner] why you were [at his front door]?
> A.  I explained to Mr. Jenewicz that I had two witnesses who were out in the police vehicle that pointed out his residence and that stated there was possible a dead –
> [DEFENSE COUNSEL]:  Objection.
> Q.  What did you tell him?
> A.  I told him that I was there because two witnesses had stated that at that residence . . . —
> [DEFENSE COUNSEL]:  Objection, your Honor.  If he's going to –
> THE COURT:  This -- I'm going to overrule the objection since the officer is testifying about what he told the defendant.  It's not being offered for the truth of the matter stated therein.  It's simply being offered to relate the conversation between the officer and the defendant.  So you can answer that question.
> [OFFICER CASEY]:  Yes, sir.  I stated that the two witnesses pointed out his house, that there was possibly a dead body located in [his] residence . . . .

(*See* Sept. 16, 2008 Tr. Transcript, ECF No. 10-4, at 15:24–16:21.)

[3] Although Petitioner alleges that the trial court admitted the grand jury transcript into evidence, the record shows that the prosecutor merely marked the transcript for identification.  (*See* Sept. 17, 2008 Tr. Transcript, ECF No. 10-5, at 3:6, 81:4–12.)

7

The Appellate Division denied Ground One pursuant to New Jersey Rule 2:11-3(e)(2).[4] *See Jenewicz*, 2013 WL 5629169, at *9. It concluded that the argument was without sufficient merit to warrant discussion in its written opinion. *See id.*[5]

Petitioner fails to demonstrate that the Appellate Division's determination is contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Nor does this Court discern any error, let alone constitutionally significant error, in the Appellate Division's decision.

The Sixth Amendment's Confrontation Clause guarantees a defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. This includes the defendant's right to test a witness' credibility through cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination . . . which is the principal means by which the believability of a witness and the truth of his testimony are tested.").

Moreover, a defendant's right to cross-examine those "witnesses against him" is not limited to those who actually testify at trial. *See Crawford v. Washington*, 541 U.S. 36, 42–59 (2004). It also includes those absent witnesses whose *testimonial hearsay* statements are offered at trial and who are available to testify or whom defendant has not had a prior opportunity to cross-examine. *See id.* However, the defendant's right to cross-examination does not apply to absent witnesses whose statements are not offered to prove the truth of the matter asserted and, thus, do not

---

[4] New Jersey Court Rule 2:11-3(e)(2) provides that "when in an appeal in a criminal . . . matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion, the court may affirm by specifying such arguments and quoting this rule and paragraph."

[5] Although the Appellate Division's decision does not explain why Petitioner's claim lacked merit or provide any additional reasoning, the Court must nevertheless apply AEDPA deference to it because it constitutes an adjudication on the merits. *See Harrington*, 562 U.S. at 98–100.

8

constitute hearsay. *Id.* at 59 n.9 ("The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").

Here, the statement at issue – Terenin's statement to police that there was a possible dead body in Petitioner's home – is not hearsay because the prosecution did not offer it for its truth, *i.e.*, to prove that there was, in fact, a dead body in Petitioner's home. (*See* Sept. 16, 2008 Tr. Transcript 15:24–16:21.) Instead, the statement merely provided context to explain Officer Casey's subsequent conversation with Petitioner and request to search his home. (*See id.*) Thus, Petitioner fails to demonstrate that he had a right to confront Terenin or that the Appellate Division's determination is otherwise contrary to, or an unreasonable application of, Petitioner's Sixth Amendment rights as set forth by the Supreme Court. Accordingly, the Court will deny Ground One.[6]

---

[6] To the extent that this Court could construe Ground One as asserting a prosecutorial misconduct claim under the Fourteenth Amendment for the prosecution's alleged eliciting or use of false testimony, the claim still fails. The Supreme Court has long held that a state's knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment. *See Giglio v. United States*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To state a due process violation in such circumstances, one must show that a witness committed perjury, the government knew or should have known of his perjury, the perjured testimony went uncorrected, and there is a reasonable likelihood that the false testimony affected the verdict. *See Lambert v. Blackwell*, 387 F.3d 210, 242–43 (3d Cir. 2004).

This Court's review of the record indicates that the Appellate Division's decision rejecting this claim did not run afoul of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). There is nothing in the record to indicate that Terenin falsely testified at the grand jury hearing or otherwise. *See Lambert*, 387 F.3d at 242–43. Petitioner himself admitted at trial that he shot Gillens and dismembered her body in his basement to cover up what had happened. (*See* Sept. 23, 2008 Tr. Transcript 63:14–71:4.) For the same reason, there is not a reasonable likelihood that the admission of Terenin's statement affected the verdict. *See Lambert*, 387 F.3d at 242–43. Accordingly, Petitioner is not entitled to relief on Ground One.

**B.      Fourth Amendment Claims (Grounds Two and Four)**

Petitioner raises several Fourth Amendment[7] arguments asserting that the police conducted an illegal, warrantless search of his home.  (*See* Am. Pet. 8, 11.)  For example, in Ground Two, Petitioner asserts that the police officers' act of cutting open the trash bag inside the garbage can in his basement constituted an illegal search.  (*See* Am. Pet. 8.)   Likewise, in Ground Four, Petitioner argues that the police did "not inadvertent[ly]" discover remnants of Gillens' body in his home "since they 'came in force' surrounding [his] residence."  (*See* Am. Pet. 11.)[8]

Fourth Amendment claims are not generally cognizable on *habeas* review.  *See Stone v. Powell*, 428 U.S. 465, 482 (1976).  In *Stone*, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial."  *Id.*  This bar applies whether the claim is potentially meritorious or not.  *See Deputy v. Taylor*, 19 F.3d 1485, 1491 (3d Cir. 1994).

Here, Petitioner has had a full and fair opportunity to litigate these claims.  Petitioner raised these claims to the Appellate Division and New Jersey Supreme Court on direct appeal.  (*See Pro Se* Direct Appeal Br.; Pet. for Certification on Direct Appeal, ECF No. 13.)   The state courts considered and rejected them.  *See Jenewicz*, 88 A.3d at 936; *Jenewicz*, 2013 WL 5629169, at *1.

---

[7]  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects[] against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.

[8]  The Court liberally construes Ground Four as asserting that the discovery of parts of Gillens' body in Petitioner's home could not fall under the plain view exception to the warrant requirement because it was not inadvertent, and, therefore, the police's search was illegal.  *See Horton v. California*, 496 U.S. 128, 141–42 (1990) (discussing and rejecting an inadvertence requirement to the plain view doctrine).

Accordingly, Petitioner is not entitled to federal habeas relief, *see Stone*, 428 U.S. at 482, and the Court will deny Grounds Two and Four.

      **C.**      **Evidentiary Claim (Ground Three)**

Finally, in Ground Three, Petitioner claims that he "was not allowed to demonstrate to [the] jury [his] state of mind due to intoxication" at the time police "knocked on [his] door." (*See* Am. Pet. 9; *Pro Se* Direct Appeal Br. 3.) Petitioner contends that the trial court should have permitted him to show the jury his history as an alcoholic, visits to rehabilitation facilities and hospitals, and his signature on the *Miranda* cards that he signed on the night of his arrest presumably to demonstrate that he did not voluntarily consent to police to search his house because he was intoxicated. (*See* Am. Pet. 9 ("What normal person would let the police into their home if everything was not 'kosher'[?]"))

The Appellate Division considered this claim on direct appeal and concluded that it was without sufficient merit to warrant discussion pursuant to New Jersey Rule 2:11-3(e)(2). *See Jenewicz*, 2013 WL 5629169, at *9. As the New Jersey Supreme Court summarily denied this claim on direct appeal, *see Jenewicz*, 88 A.3d at 936, this Court "look[s] through" the summary denial and applies AEDPA's standards to the Appellate Division's determination. *See Simmons*, 590 F.3d at 231–32.[9]

In this case, Petitioner fails to carry his burden under AEDPA of establishing that he is entitled to relief. *See Harrington*, 562 U.S. at 103; *Eley*, 712 F.3d at 846. Petitioner offers no explanation of how the Appellate Division's determination runs afoul of Supreme Court precedent

---

[9] As noted above, although the Appellate Division's decision does not explain why Petitioner's claim lacked merit or offer any additional reasoning, the Court must nevertheless apply AEDPA deference to it because it constitutes an adjudication on the merits. *See Harrington*, 562 U.S. at 98–100.

or is based on an unreasonable determination of the facts. (*See* Am. Pet. 9–10.) Accordingly, the Court is unable to grant him relief. *See* 28 U.S.C. § 2254(d).

Moreover, Petitioner's claim appears to be patently meritless because the trial court permitted Petitioner to testify at trial as to his history of intoxication, (*see* Sept. 23, 2008 Tr. Transcript, ECF No. 11-2, at 38:4–39:8), and it admitted the *Miranda* cards into evidence, (*see* Sept. 17, 2008 Tr. Transcript 4:19–21.) To the extent that Petitioner argues that he did not voluntarily consent to a search of his home, such a claim is not cognizable on habeas review. *See* discussion *supra* Section III.B. Accordingly, the Court will deny Petitioner relief on Ground Three. *See* 28 U.S.C. § 2254(d).

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would not disagree with the Court's denial of Petitioner's habeas petition. Accordingly, the Court will deny a certificate of appealability.

## V.     CONCLUSION

For the reasons stated above, the Court will deny the petition and will not issue a certificate of appealability.  An appropriate Order follows.

Date: April 22, 2022

>                             s/ Zahid N. Quraishi
>                             **ZAHID N. QURAISHI**
>                             **UNITED STATES DISTRICT JUDGE**